**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **DANIEL NEGRETE**, | ) |
| *Plaintiff,* | ) ) ) |
| | ) **Case No.:** |
| v. | ) ) |
| **LIVEFREE EMERGENCY RESPONSE LLC and QSYNGERGY LLC,** | ) ) ) **Jury Trial Demanded** |
| *Defendants.* | ) ) |

## COMPLAINT

COMES NOW Plaintiff, **Daniel Negrete,** ("Plaintiff" or "Mr. Negrete"), through his counsel, for his Complaint against Defendants **LiveFree Emergency Response, LLC** ("LiveFree") and **QSynergy LLC** ("QSynergy") (collectively "Defendants"). In connection therewith, Plaintiff alleges as follows:

### Introduction

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.*

2. In 1991, President George H.W. Bush signed into law the TCPA, which was passed in a bi-partisan manner, to protect consumers' privacy rights. Specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

1

4. The TCPA, through the accompanying Code of Federal Regulations, 47 C.F.R. § 64.1200 *et seq.,* affords special protections for people who registered their phone numbers on the National Do Not Call Registry.

5. Where a consumer's phone number is registered on the Do Not Call registry, the TCPA requires that telemarketers provide clear and conspicuous notice to the consumer that it will be making telemarketing calls for solicitation or advertising purposes, and requires that the consumer provide express written consent.

6. Section 227(c)(5) of the TCPA provides that each person who receives more than one call within a 12-month period on their phone, where that person did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. Plaintiff seeks to exercise his rights under the TCPA against Defendants LiveFree and QSynergy for unlawful robocalls which were made for telemarketing purposes.

**The Parties**

8. Plaintiff Daniel Negrete is an adult citizen who all times relevant to this Complaint resided in in Des Moines, Iowa.

9. Defendant LiveFree is a Delaware corporation, which maintains its headquarters at 3411 Hawthorne Road, Pocatello, ID 83021.

10. LiveFree is a medical equipment supplier.

11. LiveFree is headquartered in Delaware and transacts business in Delaware and throughout the United States.

12. Defendant QSyngergy is a Florida LLC maintains its headquarters at 19219 Brown Rd., Lutz, Florida 33559.

13. Upon information and belief, QSynergy is a marketing company that engages in telemarketing.

14. QSynergy does business in Delaware and throughout the United States.

### Jurisdiction and Venue

15. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

16. Defendants continuously and systematically transact business in the State of Delaware.

17. At all times relevant hereto, Defendant LiveFree was incorporated in the state of Delaware.

18. Q Synergy entered into a business agreement to conduct telemarketing on behalf of LiveFree, a Delaware corporation.

19. For the foregoing reasons, personal jurisdiction exists and venue is proper, pursuant to 28 U.S.C. § 1391(b)(3).

### Statement of Relevant Facts

20. At all times relevant to this Complaint, Mr. Negrete owned a cell phone, the number for which was 515-XXX-8848.

21. Mr. Negrete used that cell phone primarily for residential purposes.

22. Mr. Negrete registered his cell phone number on the National Do Not Call Registry on or around December 21, 2003.

23. Mr. Negrete registered his cell phone number on the National Do Not Call Registry to obtain solitude from unwanted and invasive telemarketing calls.

24. Defendant LiveFree is a national medical supplier that sells various medical supplies to consumers including devices that provide "medical alerts".

25. LiveFree markets products and services, in part, through placing telephone calls to prospective customers' cellular and landline phones.

26. Furthermore, LiveFree engages agents and telemarketers including but not limited to QSynergy, to contact potential customers.

27. Defendants placed numerous unwanted calls to Mr. Negrete's cell phone using an artificial or pre-recorded voice.

28. Upon information and belief, QSynergy placed many of the calls on behalf of, for the benefit of and at the direction of LiveFree.

29. Before Defendants began placing telemarketing calls to Mr. Negrete's cell phone, Mr. Negrete did not provide consent for LiveFree and/or QSynergy to place such telemarketing calls.

30. Likewise, neither QSynergy nor LiveFree presented a clear and conspicuous disclosure to Mr. Negrete that they would make telemarketing calls to his cell phone.

31. Mr. Negrete had no prior business relationship with LiveFree or QSynergy.

32. Mr. Negrete was not in the market for a medical alert device and had not consented to receive calls from telemarketers selling same.

33. Prior to the solicitation calls at issue, Mr. Negrete never inquired of Defendants about LiveFree products or services.

34. Despite the foregoing, Defendants placed invasive and irritating telemarketing calls to Mr. Negrete's cell phone on numerous occasions in furtherance of its efforts to sell medical alert devices which Plaintiff had no interest or need.

35. Defendants' telemarketing calls to Plaintiff utilized a prerecorded voice in an effort to solicit business.

36. For instance, when Mr. Negrete answered a call from Defendants on June 22, 2021, a pre-recorded voice played with the following message, "Hello this is Amy with Medical Services. You were recently recommended by a medical professional to receive an emergency medical alert system at no cost to you, and your system is ready to be shipped. Press '1' now and hold the line to receive your medical alert system at no cost. One in three Americans over the age of 65 fall every year in the U.S. and it could be the last. Don't be a statistic. Press '1' now and hold the line to receive your no cost medical alert system. Press '1' now."

37. Likewise, on June 28, 2021, Plaintiff answered a call from Defendants and a pre-recorded voice played with the following message, "Hello this is Amy with Medical Services. You were recently recommended by a medical professional to receive an emergency medical alert system at no cost to you, and your system is ready to be shipped. Press '1' now and hold the line to receive your medical alert system at no cost. One in three Americans over the age of 65 fall every year in the U.S. and it could be the last. Don't be a statistic. Press '1' now and hold the line to receive your no cost medical alert system. Press '1' now."

38. Each call Plaintiff answered from Defendants contained pre-recorded messages identical or similar to those described above.

39. Those calls were made on instances including but not limited to:

| Date/Time: | Caller ID: |
|---|---|
| June 22, 2021 1:34 pm Central | (515) 246-4376 |
| June 24, 2021 9:22 am Central | (515) 246-3422 |
| June 25, 2021 4:16 pm Central | (515) 776-7162 |
| June 28, 2021 9:26 am Central | (515) 246-4493 |
| June 29, 2021 9:31 am Central | (515) 776-5061 |
| June 30, 2021 10:35 pm Central | (515) 246-7641 |
| June 30, 2021 3:21 pm Central | (515) 246-8761 |
| June 30, 2021 3:58 pm Central | (515) 777-9470 |
| July 1, 2021 10:28 am Central | (515) 246-9945 |
| July 6, 2021 9:51 am Central | (515) 246-6486 |
| July 7, 2021 1:01 pm Central | (515) 246-2815 |
| July 7, 2021 3:36 pm Central | (855) 352-5378 |
| July 9, 2021 9:36 am Central | (515) 246-6910 |
| July 12, 2021 9:25 am Central | (515) 246-1818 |
| July 12, 2021 10:18 am Central | (515) 771-8020 |
| July 13, 2021 1:18 pm Central | (515) 246-5460 |
| July 14, 2021 9:56 am Central | (515) 246-4710 |
| July 16, 2021 1:37 pm Central | (515) 246-5337 |
| July 19, 2021 11:13 am Central | (515) 246-6579 |
| July 20, 2021 2:30 pm Central | (515) 246-5249 |
| July 21, 2021 4:24 pm Central | (515) 246-5039 |
| July 22, 2021 3:15 pm Central | (515) 246-7774 |

40. Upon information and belief, Plaintiff received additional calls to his cellular phone from Defendants not included in the above-list.

41. During the unlawful call on July 7, 2021, which commenced at approximately 3:36 pm CST, Plaintiff informed an agent of Defendants that he wanted to be removed from their call list and placed on a Do-Not-Call list.  The agent informed Plaintiff that he would be removed from any of their call lists.

42. Despite that clear and unequivocal request, the unwanted calls persisted.

43.     Plaintiff was annoyed, irritated, upset and experienced a sense that his privacy was violated by Defendants as a result of receiving the numerous phone calls after he had long been registered on the National Do Not Call Registry.

**LiveFree and QSynergy: Direct and Vicarious Liability**

44.     Upon information and belief, QSynergy is a telemarketer, and LiveFree is a seller. Accordingly, QSynergy placed calls on behalf of LiveFree

45.     To the extent Defendant LiveFree outsourced its illegal robocalling to QSynergy, LiveFree would still be vicariously liable for calls that violate the TCPA.

46.     On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

47.     Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and

7

immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

48. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

49. Upon information and belief, Defendant LiveFree hired, permitted, and enjoyed the benefits of QSynergy's unlawful robo-calling.

50. Upon information and belief, LiveFree acted as a principal to QSynergy, who acted as LiveFree's agent.

51. Defendant LiveFree is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from QSynergy's unlawful calls.

52. To the extent QSynergy placed unlawful calls on behalf of LiveFree or for the benefit of LiveFree, QSynergy would be directly liable as the party that caused the unlawful calls to be placed.

53. Likewise, QSynergy would be vicariously liable for the unlawful calls, as it contracted with LiveFree and benefitted from QSynergy's unlawful calls and directed QSynergy's violative conduct.

54. On the other hand, to the extent LiveFree directly placed unlawful calls to Plaintiff, LiveFree would be directly liable for such calls.

[THIS PORTION OF THE PAGE WAS INTENTIONALLY LEFT BLANK]

## COUNT I
## VIOLATIONS OF 47 U.S.C. § 227(b) OF THE TCPA

55. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

56. The TCPA states, in part:

> It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using [a] prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . .

47 U.S.C. § 227(b)(1).

57. By placing prerecorded voice calls to the cell phone of Mr. Negrete without first obtaining their prior express written consent Defendants violated the TCPA, including, but not limited to 47 U.S.C. § 227(b)(1).

58. Likewise, by placing prerecorded calls Plaintiff's cell phone and leaving pre-recorded messages for Plaintiff after he made it known to Defendants that the calls were unwanted, Defendants' calls were in further violation of the TCPA and demonstrate willfulness.

59. The TCPA provides for a private right of action and statutory damages of $500 per violation, and up to $1,500.00 if the violation is determined to be willful. 47 U.S.C. § 227(b)(3).

## COUNT II:
## VIOLATION OF 47 U.S.C. § 227(c)(5) OF THE TCPA

60. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

61. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on

9

their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

62. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

63. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2).

64. The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

65. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

66. In addition, the TCPA allows the Court to enjoin LiveFree's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

67. By calling Mr. Negrete after his number was registered on the National Do Not Call Registry, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

68. Defendants knew or should have known that Mr. Negrete had his number registered on the Do Not Call Registry.

69. Negrete is entitled to damages of $500.00 per violation for each call placed and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Daniel Negrete, respectfully prays for judgment against LiveFree Emergency Response, LLC and QSynergy LLC as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));
b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));
c. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));
d. Additional statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c)(5)(B);
e. Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c)(5)(C);
f. Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c); and
g. Any other relief this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Daniel Negrete demands a jury trial in this case.

Respectfully submitted,

Dated:                           By: /s/ *W. Christopher Componovo*
W. Christopher Componovo, Esq.
Kimmel & Silverman, P.C.
501 Silverside Road, Suite 118
Wilmington, DE 19809
Telephone: (302) 791-9373
Facsimile: (302) 791-9476
WComponovo@lemonlaw.com


/s/ *Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
(*pro hac vice motion forthcoming*)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
(215) 540-8888 ext. 104
Facsimile: (877) 788-2864
Email:jginsburg@creditlaw.com
teamkimmel@creditlaw.com