UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL NEGRETE, ) | |
| ) | |
| Plaintiff, ) | Civil Action File No. |
| vs. ) | C.A. No.: 1:21-cv-01748-CFC |
| ) | |
| LIVEFREE EMERGENCY RESPONSE ) | |
| LLC and QSYNERGY LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT QSYNERGY, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant, QSynergy, LLC ("QSynergy"), by and through its undersigned counsel, files this Answer and Affirmative Defenses to Plaintiff's Complaint, and in support of which states as follows:

**Introduction**

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.*

**ANSWER:** **QSynergy admits that Plaintiff purports to bring claims against QSynergy under the TCPA, but denies that Plaintiff is entitled to any relief.**

2. In 1991, President George H.W. Bush signed into law the TCPA, which was passed in a bi-partisan manner, to protect consumers' privacy rights. Specifically, the right to be left alone from unwanted telemarketing calls.

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.**

1

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.**

4. The TCPA, through the accompanying Code of Federal Regulations, 47 C.F.R. § 64.1200 *et seq.,* affords special protections for people who registered their phone numbers on the National Do Not Call Registry.

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.**

5. Where a consumer's phone number is registered on the Do Not Call registry, the TCPA requires that telemarketers provide clear and conspicuous notice to the consumer that it will be making telemarketing calls for solicitation or advertising purposes, and requires that the consumer provide express written consent.

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.**

6. Section 227(c)(5) of the TCPA provides that each person who receives more than one call within a 12-month period on their phone, where that person did not provide express written

consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

**ANSWER:** **QSynergy states that the language of the TCPA speaks for itself and denies any allegation in Paragraph 6 inconsistent therewith.**

7. Plaintiff seeks to exercise his rights under the TCPA against Defendants LiveFree and QSynergy for unlawful robocalls which were made for telemarketing purposes.

**ANSWER:** **QSynergy admits that Plaintiff purports to bring claims against QSynergy under the TCPA, but denies that Plaintiff is entitled to any relief.**

### The Parties

8. Plaintiff Daniel Negrete is an adult citizen who all times relevant to this Complaint resided in in Des Moines, Iowa.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.**

9. Defendant LiveFree is a Delaware corporation, which maintains its headquarters at 3411 Hawthorne Road, Pocatello, ID 83021.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9.**

10. LiveFree is a medical equipment supplier.

**ANSWER:** **Admitted.**

11. LiveFree is headquartered in Delaware and transacts business in Delaware and throughout the United States.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11.**

12. Defendant QSyngergy is a Florida LLC maintains its headquarters at 19219 Brown Rd., Lutz, Florida 33559.

**ANSWER:** **Admitted.**

13. Upon information and belief, QSynergy is a marketing company that engages in telemarketing.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to admit or deny whether it engages in "telemarketing" as that term is undefined.**

14. QSynergy does business in Delaware and throughout the United States.

**ANSWER:** **Denied.**

### Jurisdiction and Venue

15. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

**ANSWER:** **Denied.**

16. Defendants continuously and systematically transact business in the State of Delaware.

**ANSWER:** **Denied.**

17. At all times relevant hereto, Defendant LiveFree was incorporated in the state of Delaware.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.**

18. Q Synergy entered into a business agreement to conduct telemarketing on behalf of LiveFree, a Delaware corporation.

**ANSWER:** **Denied.**

19. For the foregoing reasons, personal jurisdiction exists and venue is proper, pursuant to 28 U.S.C. § 1391(b)(3).

**ANSWER:** **Denied.**

## Statement of Relevant Facts

20. At all times relevant to this Complaint, Mr. Negrete owned a cell phone, the number for which was 515-XXX-8848.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.**

21. Mr. Negrete used that cell phone primarily for residential purposes.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.**

22. Mr. Negrete registered his cell phone number on the National Do Not Call Registry on or around December 21, 2003.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.**

23. Mr. Negrete registered his cell phone number on the National Do Not Call Registry to obtain solitude from unwanted and invasive telemarketing calls.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.**

24. Defendant LiveFree is a national medical supplier that sells various medical supplies to consumers including devices that provide "medical alerts".

**ANSWER:** **Denied.**

25. LiveFree markets products and services, in part, through placing telephone calls to prospective customers' cellular and landline phones.

**ANSWER:** **Denied.**

26. Furthermore, LiveFree engages agents and telemarketers including but not limited to QSynergy, to contact potential customers.

**ANSWER:** **Denied.**

27. Defendants placed numerous unwanted calls to Mr. Negrete's cell phone using an artificial or pre-recorded voice.

**ANSWER:** **Denied.**

28. Upon information and belief, QSynergy placed many of the calls on behalf of, for the benefit of and at the direction of LiveFree.

**ANSWER:** **Denied.**

29. Before Defendants began placing telemarketing calls to Mr. Negrete's cell phone, Mr. Negrete did not provide consent for LiveFree and/or QSynergy to place such telemarketing calls.

**ANSWER:** **QSynergy admits that it did not have consent from Plaintiff's to place calls to his cellular telephone. After reasonable inquiry, QSynergy lacks knowledge or information as to whether it called Plaintiff's cellular number or as to the truth of the remaining allegations in Paragraph 29.**

30. Likewise, neither QSynergy nor LiveFree presented a clear and conspicuous disclosure to Mr. Negrete that they would make telemarketing calls to his cell phone.

**ANSWER:** **QSynergy admits that it did not present a disclosure to Plaintiff that it would call his cellular number. After reasonable inquiry, QSynergy lacks knowledge or information as to whether it called Plaintiff's cellular number or as to the truth of the remaining allegations in Paragraph 30.**

31. Mr. Negrete had no prior business relationship with LiveFree or QSynergy.

**ANSWER:** **QSynergy admits Plaintiff had no business relationship with QSynergy. After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31.**

32. Mr. Negrete was not in the market for a medical alert device and had not consented to receive calls from telemarketers selling same.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.**

33. Prior to the solicitation calls at issue, Mr. Negrete never inquired of Defendants about LiveFree products or services.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.**

34. Despite the foregoing, Defendants placed invasive and irritating telemarketing calls to Mr. Negrete's cell phone on numerous occasions in furtherance of its efforts to sell medical alert devices which Plaintiff had no interest or need.

**ANSWER:** **Denied.**

35. Defendants' telemarketing calls to Plaintiff utilized a prerecorded voice in an effort

to solicit business.

**ANSWER:** **Denied.**

36. For instance, when Mr. Negrete answered a call from Defendants on June 22, 2021, a pre-recorded voice played with the following message, "Hello this is Amy with Medical Services. You were recently recommended by a medical professional to receive an emergency medical alert system at no cost to you, and your system is ready to be shipped. Press '1' now and hold the line to receive your medical alert system at no cost. One in three Americans over the age of 65 fall every year in the U.S. and it could be the last. Don't be a statistic. Press '1' now and hold the line to receive your no cost medical alert system. Press '1' now."

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.**

37. Likewise, on June 28, 2021, Plaintiff answered a call from Defendants and a prerecorded voice played with the following message, "Hello this is Amy with Medical Services. You were recently recommended by a medical professional to receive an emergency medical alert system at no cost to you, and your system is ready to be shipped. Press '1' now and hold the line to receive your medical alert system at no cost. One in three Americans over the age of 65 fall every year in the U.S. and it could be the last. Don't be a statistic. Press '1' now and hold the line to receive your no cost medical alert system. Press '1' now."

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.**

38. Each call Plaintiff answered from Defendants contained pre-recorded messages identical or similar to those described above.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.**

39. Those calls were made on instances including but not limited to:

| Date/Time: | Caller ID: |
|---|---|
| June 22, 2021 1:34 pm Central | (515) 246-4376 |
| June 24, 2021 9:22 am Central | (515) 246-3422 |
| June 25, 2021 4:16 pm Central | (515) 776-7162 |
| June 28, 2021 9:26 am Central | (515) 246-4493 |
| June 29, 2021 9:31 am Central | (515) 776-5061 |
| June 30, 2021 10:35 pm Central | (515) 246-7641 |
| June 30, 2021 3:21 pm Central | (515) 246-8761 |
| June 30, 2021 3:58 pm Central | (515) 777-9470 |
| July 1, 2021 10:28 am Central | (515) 246-9945 |
| July 6, 2021 9:51 am Central | (515) 246-6486 |
| July 7, 2021 1:01 pm Central | (515) 246-2815 |
| July 7, 2021 3:36 pm Central | (855) 352-5378 |
| July 9, 2021 9:36 am Central | (515) 246-6910 |
| July 12, 2021 9:25 am Central | (515) 246-1818 |
| July 12, 2021 10:18 am Central | (515) 771-8020 |
| July 13, 2021 1:18 pm Central | (515) 246-5460 |
| July 14, 2021 9:56 am Central | (515) 246-4710 |
| July 16, 2021 1:37 pm Central | (515) 246-5337 |
| July 19, 2021 11:13 am Central | (515) 246-6579 |
| July 20, 2021 2:30 pm Central | (515) 246-5249 |
| July 21, 2021 4:24 pm Central | (515) 246-5039 |
| July 22, 2021 3:15 pm Central | (515) 246-7774 |

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.**

40. Upon information and belief, Plaintiff received additional calls to his cellular phone from Defendants not included in the above-list.

**ANSWER:** **Denied.**

41. During the unlawful call on July 7, 2021, which commenced at approximately 3:36 pm CST, Plaintiff informed an agent of Defendants that he wanted to be removed from their call

9

list and placed on a Do-Not-Call list. The agent informed Plaintiff that he would be removed from any of their call lists.

**ANSWER:** **After reasonable inquiry, QSynergy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.**

42. Despite that clear and unequivocal request, the unwanted calls persisted.

**ANSWER:** **Denied.**

43. Plaintiff was annoyed, irritated, upset and experienced a sense that his privacy was violated by Defendants as a result of receiving the numerous phone calls after he had long been registered on the National Do Not Call Registry.

**ANSWER:** **Denied.**

### LiveFree and QSynergy: Direct and Vicarious Liability

44. Upon information and belief, QSynergy is a telemarketer, and LiveFree is a seller. Accordingly, QSynergy placed calls on behalf of LiveFree.

**ANSWER:** **Denied.**

45. To the extent Defendant LiveFree outsourced its illegal robocalling to QSynergy, LiveFree would still be vicariously liable for calls that violate the TCPA.

**ANSWER:** **Denied.**

46. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where thirdparty

10

> telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.**

47. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.**

48. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the**

**extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.**

49. Upon information and belief, Defendant LiveFree hired, permitted, and enjoyed the benefits of QSynergy's unlawful robo-calling.

**ANSWER:** **Denied.**

50. Upon information and belief, LiveFree acted as a principal to QSynergy, who acted as LiveFree's agent.

**ANSWER:** **Denied.**

51. Defendant LiveFree is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from QSynergy's unlawful calls.

**ANSWER:** **Denied.**

52. To the extent QSynergy placed unlawful calls on behalf of LiveFree or for the benefit of LiveFree, QSynergy would be directly liable as the party that caused the unlawful calls to be placed.

**ANSWER:** **Denied.**

53. Likewise, QSynergy would be vicariously liable for the unlawful calls, as it contracted with LiveFree and benefitted from QSynergy's unlawful calls and directed QSynergy's violative conduct.

**ANSWER:** **Denied.**

54. On the other hand, to the extent LiveFree directly placed unlawful calls to Plaintiff, LiveFree would be directly liable for such calls.

**ANSWER:** **Denied.**

## COUNT I
## VIOLATIONS OF 47 U.S.C. § 227(b) OF THE TCPA

55. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

**ANSWER:** **QSynergy incorporates by reference its answers to the above paragraphs as though fully stated herein.**

56. The TCPA states, in part:

> It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using [a] prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . .

47 U.S.C. § 227(b)(1).

**ANSWER:** **QSynergy states that the language of the TCPA speaks for itself and denies any allegation in Paragraph 56 inconsistent therewith.**

57. By placing prerecorded voice calls to the cell phone of Mr. Negrete without first obtaining their prior express written consent Defendants violated the TCPA, including, but not limited to 47 U.S.C. § 227(b)(1).

**ANSWER:** **Denied.**

58. Likewise, by placing prerecorded calls Plaintiff's cell phone and leaving prerecorded messages for Plaintiff after he made it known to Defendants that the calls were unwanted, Defendants' calls were in further violation of the TCPA and demonstrate willfulness.

**ANSWER:** **Denied.**

59. The TCPA provides for a private right of action and statutory damages of $500 per violation, and up to $1,500.00 if the violation is determined to be willful. 47 U.S.C. § 227(b)(3).

**ANSWER:** **QSynergy states that the language of the TCPA speaks for itself and denies any allegation in Paragraph 59 inconsistent therewith.**

## COUNT II:
## VIOLATION OF 47 U.S.C. § 227(c)(5) OF THE TCPA

60. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

**ANSWER:** **QSynergy incorporates by reference its answers to the above paragraphs as though fully stated herein.**

61. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

**ANSWER:** **QSynergy states that the language of the TCPA speaks for itself and denies any allegation in Paragraph 61 inconsistent therewith.**

62. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

**ANSWER:** **QSynergy states that the language of the TCPA speaks for itself and denies any allegation in 62 inconsistent therewith.**

63. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2).

**ANSWER:** **QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the**

extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.

64. The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

**ANSWER:** QSynergy neither admits nor denies the statements in this paragraph, as it does not contain factual allegations as to which admittance or denial is required. To the extent it contains any allegations as to which an admittance or denial is required, QSynergy denies the allegations.

65. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

**ANSWER:** QSynergy states that the language of the TCPA speaks for itself and denies any allegation in Paragraph 65 inconsistent therewith.

66. In addition, the TCPA allows the Court to enjoin LiveFree's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

**ANSWER:** Denied.

67. By calling Mr. Negrete after his number was registered on the National Do Not Call Registry, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

**ANSWER:** **Denied.**

68. Defendants knew or should have known that Mr. Negrete had his number registered on the Do Not Call Registry.

**ANSWER:** **Denied.**

69. Negrete is entitled to damages of $500.00 per violation for each call placed and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

**ANSWER:** **Denied.**

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Daniel Negrete demands a jury trial in this case.

**ANSWER:** **QSynergy demands a trial by jury.**

## AFFIRMATIVE DEFENSES

1. The Venue is improper as to Defendant QSynergy.

        Respectfully submitted,

        **MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

        */s/ Armand J. Della Porta, Jr.*
        Armand J. Della Porta, Jr., Esq. (#2861)
        1007 N. Orange Street, Suite 600
        P.O. Box 8888
        Wilmington, DE  19899
        (302) 552-4323
        *Attorney for Defendants LiveFree Emergency Response LLC and QSynergy     LLC*

/s/ Stephanie A. Strickler
Stephanie A. Strickler
**Messer Strickler Burnette, Ltd.**
142 W. Station Street
Barrington, IL 60010
*Attorney for Defendant QSynergy, LLC*

ADMITTED PRO HAC VICE

Dated: February 14, 2022